SEMINOLE HILLS LAND CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 5723.   Promulgated October 20, 1927.

INVESTED CAPITAL.—Petitioner acquired for its stock certain land which had been sold approximately two months prior thereto for $100,000. *Held*, that for purposes of invested capital the value of the land was $100,000 and that the evidence does not establish a greater value.

*Don F. Reed, Esq.*, for the petitioner.
*D. H. Green, Esq.*, for the respondent.

This action has been brought for a redetermination of deficiencies asserted by the respondent in the amounts and for the calendar years as follows:

| | |
|---|---:|
| 1919 | $4, 324. 45 |
| 1920 | 2, 175. 10 |
| 1921 | 739. 37 |
| Total | 7, 238. 92 |

The petitioner alleges that the respondent erred in refusing to allow as the cost or value of property on May 29, 1916, the sum of $124,000 for purposes of invested capital in computing taxes for each of the years in controversy.

### FINDINGS OF FACT.

The Seminole Hills Land Co. was organized on May 29, 1916, under the laws of the State of Michigan, for the purpose of buying and developing as building lots a certain tract of land acquired as hereinafter set forth. Since incorporation the petitioner has been engaged in the real estate business in Pontiac, Mich.

Some time near April 1, 1916, Frederick C. Shipman and F. Floyd Kent, for $500 in cash, secured an option for the purchase of 135 acres of farm land located in the southwestern part of the City of Pontiac, from Etta E. Roberts, for the sum of $100,000, payable as follows: $20,000 on or about June 1, 1916, upon the execution of a land contract to be dated the time of execution; subsequently, $15,000 to be paid 6 months from date of contract; $15,000, 12 months from

date of contract; thereafter, $5,000 annually with the privilege of paying the whole amount at any interest date; interest to be paid at the rate of 6 per cent per annum, payable semiannually and the above-mentioned $500 to apply upon the purchase price as part of the first payment.

At the time the said option was secured, both the prospective vendor and the vendees knew that a paved road was being constructed between Birmingham and Pontiac which gave promise to a rapid growth in Pontiac, and also that the purpose of the vendees was to develop and subdivide the property into building lots.

Shipman and Kent, not being able to handle the property without financial assistance, associated with themselves Henry Wineman, Jr., and Fred C. Harvey. The said four parties paid the balance of the $20,000, the amount of the first payment required by the option, and agreed to form a corporation for the development of the property. This agreement is not in evidence. The petitioner was then organized with an authorized capital stock of $100,000. Shares in the amount of $56,000 were issued on July 7, 1916, as follows: 175 shares to Henry Wineman, Jr.; 175 shares to Frederick C. Shipman; 175 shares to F. Floyd Kent; and 35 shares to Fred C. Harvey. Of the $56,000 capital stock issued, $32,000 was paid for in cash, including the $20,000 paid on the 135 acres of land, and $24,000 which was distributed among the four stockholders was issued for the alleged appreciation in the value, of the said land, between the dates of the securing of the option and the acquisition of the property by the corporation. The paved road had not been completed at that time.

A contract dated June 26, 1916, was entered into between Etta E. Roberts and the Seminole Hills Land Co. for the purchase of the 135 acres of land upon the terms set forth in the option, the receipt theretofore of the $20,000 first payment being acknowledged by the vendor.

OPINION.

TRUSSELL: The only question presented for redetermination in this proceeding, is the cost or value of the 135 acres of land on the date of acquisition by the petitioner.

For the purpose of proving that the land involved had a value in May, 1916, of at least $124,000, two witnesses, each of whom was at the date of the hearing on this proceeding a vice president of a Pontiac bank, testified that in their opinion the land in question was worth $1,000 per acre in May, 1916. However, those two witnesses gave no facts upon which their opinions were based. Such opinion evidence is not entitled to much, if any, weight, for the Board must have before it sufficient facts to enable it to arrive at its own independent conclusions.

The record shows that approximately 60 days prior to the time when petitioner acquired this property, two of the promoters of the petitioner corporation had contracted to purchase the same property for $100,000. In the case of *Ruppert v. McArdle*, 42 App. D. C. 392, the court said:

Had there been no sale, the appraisements would have been a proper basis for judicial computation. But in the last instance, there was a judicial sale, which, we think, should be taken as conclusive evidence of the value of the property. An appraisement is merely prima facie evidence of the value of the property, and may be accepted in the absence of the better evidence of its market value. But a fair sale is the best evidence of the market value of the property sold.

The sale of the land in question for $100,000 near April 1, 1916, established the value of the land on that date and the period of time elapsing between said sale and the date on which the same land was transferred to the petitioner for its capital stock, was too short a time to permit a natural increase in value and from the evidence we are not warranted in finding that the land had a value greater than $100,000 on May 29, 1916.

*The deficiencies against this petitioner are in the amounts of $4,324.45 for the year 1919; $2,175.10 for the year 1920, and $739.37 for the year 1921. Judgment will be so entered in due course.*

Considered by LITTLETON, SMITH, and LOVE.